[No. D046439. Fourth Dist., Div. One. Sept. 13, 2006.]

DONNER MANAGEMENT COMPANY et al., Plaintiffs, Cross-defendants and Appellants, v.
MICHAEL SCHAFFER, Defendant, Cross-complainant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Discussion parts I. and II.

## COUNSEL

Duckor Spradling Metzger & Wynne, Scott L. Metzger, Robert M. Shaughnessy and Geoffrey C. Chackel for Plaintiffs, Cross-defendants and Appellants.

Richard W. Weinthal; Gladych & Associates, John A. Gladych and Lauren L. McNerney for Defendant, Cross-complainant and Respondent.

## OPINION

**HALLER, Acting P. J.**—Donner Management Company[1] appeals from an order awarding attorney fees to Michael Schaffer, following the dismissal without prejudice of Donner's shareholder derivative lawsuit against Schaffer and nominal defendant Asia Web Holdings, Inc. (Asia Web).[2] In the pub-

---

[1] Appellants also include Charles Greer, Norman Schwartz, David Reiter, David Levy, Elliot Pearlman, and David Burney. We refer to appellants collectively as "Donner."

[2] During the pendency of the derivative lawsuit, Asia Web merged with Case Financial, Inc., and adopted the latter company's name. For simplicity, we refer to the company as Asia Web. Asia Web is not a party to this appeal.

lished portion of this opinion, we hold that when at the commencement of a derivative lawsuit a shareholder-plaintiff voluntarily posts security under Corporations Code[3] section 800, a prevailing defendant seeking attorney fees at the conclusion of the lawsuit need not retrospectively show the lawsuit had no reasonable possibility of benefiting the corporation. We also reject Donner's argument that a frivolous litigation standard should be imposed as a prerequisite to a prevailing defendant's collection of a security furnished under section 800. Finally, we hold the practical definition of "prevailing party" applies to this case involving a dismissal without prejudice, and the trial court did not abuse its discretion in determining Schaffer was the prevailing party for purposes of an attorney fees award based on the security. Accordingly, we affirm the order.

In the unpublished portion of this opinion, we (1) deny Schaffer's motion to dismiss the appeal, and (2) reject Donner's argument that the trial court abused its discretion in granting Schaffer relief under Code of Civil Procedure section 473 for a late filing of his attorney fees motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Schaffer was a director and the chief executive officer of Asia Web. On March 13, 2002, Donner filed a derivative shareholder complaint against Schaffer and nominal defendant Asia Web, alleging Schaffer had breached his fiduciary duty and engaged in conversion, and requesting an accounting. On April 22, 2002, Asia Web filed a motion requesting that Donner post a bond pursuant to section 800, subdivision (c). To support the bond motion, Asia Web submitted a declaration from the current chair of its board of directors explaining that Schaffer had resigned from the corporation, and detailing reasons why the lawsuit was detrimental to the corporation.

To avoid a discovery stay pending litigation of the bond motion, Donner voluntarily deposited a $50,000 cashier's check as security to satisfy the bond request, as allowed under section 800, subdivision (e) and Code of Civil Procedure section 995.710. A stipulated order filed June 11, 2002, provided: "Plaintiffs hereby agree that pursuant to Code of Civil Procedure § 995.710 the officer of the Court is authorized to collect, sell or otherwise apply this deposit to enforce the liability of plaintiffs, or any of them, if any, on the deposit . . . . [¶] . . . [¶] It is further stipulated and agreed that defendant Michael Schaffer may participate in the security deposited by plaintiffs. Defendants Asia Web Holdings, Inc. and Michael Schaffer reserve their respective rights to apply for attorneys fees and costs and oppose any application by either of them." (Capitalization omitted.)

---

[3] Subsequent statutory references are to the Corporations Code unless otherwise specified.

Thereafter, the parties conducted discovery and the matter was set for trial. Meanwhile, in February or March 2004, Asia Web appointed a special litigation committee, composed of a newly elected board of directors, to investigate whether the lawsuit was of benefit to the corporation. After interviewing various parties to the litigation and examining documents, on April 12, 2004, the special litigation committee notified Donner of its conclusion that based on its business judgment it was not in the best interests of the company to continue the litigation. To reach this conclusion, the special litigation committee considered "a wide range of issues, independent of the merits of the litigation, including but not limited to the impact of this litigation on the time and resources of [company] personnel, its impact on future operations and fundraising efforts . . . ."

Accordingly, on May 28, 2004, Donner moved to dismiss the action without prejudice, based on its recognition that a "special litigation committee defense" in favor of the defendants had been established which barred the action. In moving to dismiss the action, Donner advised the court that it was not necessary to hold a full evidentiary hearing on the matter because Donner had concluded the members of the special litigation committee were properly independent and the committee had performed an adequate investigation, thus establishing the special litigation committee defense.

Schaffer did not oppose the motion to dismiss, but asserted that the dismissal should be with prejudice, contending that the lawsuit was without merit and had been brought to advance Donner's personal interests. The trial court rejected Schaffer's request for a dismissal with prejudice, finding that Schaffer had not presented any evidence to prove his assertions. The court dismissed the action without prejudice on August 6, 2004.

Schaffer filed a motion for attorney fees and costs based on the $50,000 security posted by Donner under section 800. The court ruled that Schaffer was the prevailing party entitled to attorney fees. To support its ruling, the court found that the special litigation committee defense was more than a procedural defense; Schaffer was successful in "mak[ing] the case go away"; and there was no recovery on the complaint.[4]

---

[4] The trial court also ruled that a cross-complaint filed by Schaffer, which had been adjudicated in favor of Donner on summary judgment, did not impact Schaffer's prevailing party status. Other than a passing comment in a footnote in its appellate brief, Donner does not challenge this aspect of the court's ruling.

## DISCUSSION

### I., II.*

· · · · · · · · · · · · · · · · · · · · · · · · · ·

### III. Award of Attorney Fees to Schaffer as the Prevailing Party Under Section 800

Donner challenges the propriety of the trial court's decision to award attorney fees under the section 800 security provision to Schaffer as the prevailing party. Donner argues fees should not be awarded under section 800 without a determination that (1) there was no reasonable possibility the lawsuit would benefit the corporation, and (2) the lawsuit was frivolous. Further, he asserts Schaffer cannot properly be characterized as the prevailing party given that the lawsuit was dismissed without prejudice with no reflection on the merits.

### A. Attorney Fees Under Section 800

To evaluate Donner's first two arguments, we review the legal principles applicable to attorney fees awards under section 800.

■ Attorney fees may not be awarded absent statutory authorization or contractual agreement. (Code Civ. Proc., § 1021; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 607, fn. 4 [71 Cal.Rptr.2d 830, 951 P.2d 399].) ■ Section 800 provides a statutory basis for attorney fees in shareholder derivative lawsuits. (See *Brusso v. Running Springs Country Club, Inc.* (1991) 228 Cal.App.3d 92, 101 [278 Cal.Rptr. 758] (*Brusso*).)

■ To compel a plaintiff-shareholder in a derivative lawsuit to furnish a bond securing payment of the defendant's attorney fees, section 800 requires that the defendant "establish[] a probability," based on affidavits or oral testimony, (1) "[t]hat *there is no reasonable possibility that the prosecution* of the cause of action alleged in the complaint against the moving party *will benefit the corporation or its shareholders*[,] [or] (2) [t]hat the [defendant] moving party, if other than the corporation, did not participate in the transaction complained of in any capacity." (§ 800, subds. (c)(2), (d), italics added.) In assessing whether there is no reasonable possibility the action will

---

*See footnote, *ante*, page 1296.

benefit the corporation, the court "must evaluate the possible defenses which the plaintiffs would have to overcome before they could prevail at trial." (2 Ballantine & Sterling, Cal. Corporation Laws (4th ed. 2005) § 293.02, p. 14-23.)

■ If the defendant does not satisfy one of the section 800 grounds for a bond and accordingly no bond or other security is posted, the defendant will not be entitled to section 800 attorney fees even if he or she prevails at the end of the litigation. (*Alcott v. M. E. V. Corp.* (1987) 193 Cal.App.3d 797, 799 [238 Cal.Rptr. 520]; Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2006) ¶ 6.659.1, pp. 6-138.15 to 6-138.16.) On the other hand, if the defendant does establish one of the section 800 grounds, the court fixes the amount of the bond (not to exceed $50,000) "to be furnished by the plaintiff for reasonable expenses, including attorneys' fees, which may be incurred by the moving party and the corporation in connection with the action, including expenses for which the corporation may be come liable pursuant to Section 317."[9] (§ 800, subd. (d).)

To prevent collateral estoppel effect, section 800, subdivision (d) provides that a court's ruling granting or denying the motion for security "shall not be a determination of any issue in the action or of the merits thereof." (See 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 337, p. 431.) If a defendant makes a successful motion under section 800 requiring the plaintiff to post a bond as security for attorney fees, and the plaintiff fails to post the bond, the trial court must dismiss the action. (§ 800, subd. (d); see *Brusso, supra,* 228 Cal.App.3d at p. 105.)

■ A plaintiff in a derivative lawsuit has the option of "avoid[ing] the inconvenience and delay of the motion proceeding by voluntarily posting a bond in the aggregate amount of $50,000, either before or after a motion [for security] is made. This will be deemed full compliance, and any pending motion must be dismissed." (3 Witkin, Cal. Procedure, *supra,* Actions, § 338, p. 432; § 800, subds. (e), (f).)[10]

---

[9] Section 317 sets forth the standards governing a corporate agent's request for indemnification from the corporation for payment of attorney fees. (See *Brusso, supra,* 228 Cal.App.3d at pp. 102–103.)

[10] Section 800, subdivision (e) states: "If the plaintiff shall, either before or after a motion is made pursuant to subdivision (c), or any order or determination pursuant to the motion, furnish a bond in the aggregate amount of fifty thousand dollars ($50,000) to secure the reasonable expenses of the parties entitled to make the motion, the plaintiff has complied with the requirements of this section and with any order for a bond theretofore made, and any such motion then pending shall be dismissed and no further or additional bond shall be required."

Additionally, Code of Civil Procedure section 995.710 sets forth the procedure utilized by Donner, which allows a deposit in lieu of a bond.

The purpose of the section 800 security provision is to prevent unwarranted shareholder derivative lawsuits. (3 Witkin, Cal. Procedure, *supra*, Actions, § 335, p. 429; *Brusso, supra,* 228 Cal.App.3d at p. 104.) The justification for the security is derived from the fact that the cause of action and potential remedy belong to the corporation, not the shareholder (see *Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 183 [133 Cal.Rptr.3d 408]), and the corporation has chosen not to pursue the litigation. As explained by the California Supreme Court: "[E]very stockholder who . . . is unable to induce the corporation, through its board of directors, to institute a particular action on its own behalf, and who undertakes as its volunteer representative to sue on the cause asserted by him, may be required to furnish security." (*Beyerbach v. Juno Oil Co.* (1954) 42 Cal.2d 11, 21 [265 P.2d 1] (*Beyerbach*).) "In these circumstances the Legislature, for the protection of third persons who have dealt with the corporation, as well as for the protection of the corporation and its officers and employe[e]s, can constitutionally require that the stockholder who would act as in the nature of a guardian ad litem must, as a condition of prosecuting the action on behalf of the corporation, either show a reasonable probability that the suit will be successful or secure the payment of the defendants' expenses should they prevail. The Legislature, of course, can attribute some weight to the fact that the corporation has not seen fit to institute action on a cause which either belongs to it or to no one." (*Id.* at pp. 23–24; see also *Chase v. Super-Cold Corp.* (1958) 163 Cal.App.2d 83, 85 [328 P.2d 812].)

### 1. *No-reasonable-possibility-of-benefit Standard*

■ Donner argues that no fees should be awarded unless there has been compliance with section 800's provision that a mandatory bond requires a showing of no reasonable possibility of benefit to the corporation from the action. Donner contends that because plaintiffs voluntarily posted the security in this case, this showing has not been made.

After initially filing our opinion in this case, we granted a rehearing and asked the parties to file supplemental briefs on the issue of whether a plaintiff's voluntary posting of a security excuses the requirement that a defendant show no reasonable possibility of benefit to the corporation. Having considered the parties' arguments, we conclude that when a plaintiff voluntarily posts security, the defendant may seek to enforce the security as the prevailing party at the conclusion of the case without having to retrospectively satisfy the no-reasonable-possibility-of-benefit standard.

█ When interpreting statutes, we seek to ascertain legislative intent so as to effectuate the purpose of the law. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) Our first task is to look at the language of the statute itself. (*Ibid.*) Section 800 contains no express language addressing what, if any, showing must be made when a defendant seeks to collect on a security that was posted voluntarily. However, section 800's voluntarily posting provision suggests that once security is posted by the plaintiff, the bond is available to pay for the defendant's attorney fees should the defendant emerge as the prevailing party. Section 800, subdivision (e) states: "If the plaintiff shall, either before or after a motion is made pursuant to subdivision (c), or any order or determination pursuant to the motion, furnish a bond in the aggregate amount of fifty thousand dollars ($50,000) *to secure the reasonable expenses of the parties entitled to make the motion*, the plaintiff has complied with the requirements of this section and with any order for a bond theretofore made, and any such motion then pending shall be dismissed and no further or additional bond shall be required." (Italics added.) █ The phrase "to secure the reasonable expenses of the parties entitled to make the motion" reflects that the security, once posted, is available to pay for the prevailing defendant's expenses. There is nothing to indicate that a prevailing defendant must make *an additional showing* to access the security.

Additionally, the bond statute mandates *dismissal* of the bond motion after a voluntary posting of security. This feature supports a conclusion that the Legislature did not intend to require a retrospective determination of the no-reasonable-possibility-of-benefit standard. When a plaintiff voluntarily posts security, the section 800 bond motion is not merely placed in abeyance waiting for resolution at the conclusion of the case. Instead, the motion is dismissed, eliminating the need and the opportunity for the court to rule on whether the moving party met its statutory burden. Thus, when a prevailing defendant seeks to collect on the security at the conclusion of the case, there is no pending bond motion upon which the trial court is expected to rule. Section 800's dismissal provision correlates with a legislative intent to dispense with the no-reasonable-possibility-of-benefit requirement in the event of a voluntary posting of security.

Moreover, from a practical perspective, imposition of a no-reasonable-possibility-of-benefit requirement at the conclusion of the litigation would fashion an awkward adjudicatory rule. The statute imposes this requirement as a threshold determination to be made by the trial court based on an assessment of whether there is a reasonable possibility the litigation will be of benefit to the corporation. After the case is concluded, retrospective evaluation of the no-reasonable-possibility-of-benefit standard would require

the trial court to ascertain whether it would have been persuaded *at the commencement of the lawsuit* that the "no benefit" showing had been made so as to compel posting of a bond. It is unlikely the Legislature would have intended to impose such a speculative task on the parties or the trial court.

Our conclusion, derived from the plain language and substantive structure of the statute, is also supported by the California Supreme Court's discussion of the bond statute in *Beyerbach, supra,* 42 Cal.2d 11. In *Beyerbach*, the court recognized that the Legislature was entitled to impose special rules on shareholder derivative lawsuits because of their unique characteristics. In upholding the constitutionality of the bond statute, *Beyerbach* reasoned that the Legislature could determine that normally corporations will pursue their own causes of action when of benefit to the corporation, and that shareholders may abuse the right to bring a derivative suit. (*Id.* at p. 23.) Accordingly, it was reasonable for the Legislature to enact a statute requiring a plaintiff-shareholder in a derivative lawsuit to *"either show a reasonable probability that the suit will be successful or secure the payment of the defendants' expenses should they prevail."* (*Beyerbach, supra,* 42 Cal.2d at pp. 23–24, italics added.) The analysis in *Beyerbach* underscores that the purpose of the security is to restrain derivative lawsuits filed by shareholders instead of the corporation itself, and supports that once the security is furnished so as to allow the plaintiff to proceed with the litigation, the security is available to reimburse the defendant should the defendant prevail.

In evaluating the constitutionality of the pretrial bond requirement, the *Beyerbach* court noted that the no-reasonable-possibility-of-benefit standard provides a due process safeguard for the plaintiff. (*Beyerbach, supra,* 42 Cal.2d at p. 24.) However, in a situation where the plaintiff voluntarily posts bond, the plaintiff is, of his or her own accord, in effect choosing to substitute one benefit (the defendant's burden to show the lawsuit is not beneficial to the corporation prior to obtaining a bond) for another benefit (the speedier resolution of the lawsuit by dispensing with litigation of the bond motion). The fact that the defendant will be able to collect on the security only if he or she is the prevailing party ensures that the plaintiff will not be unfairly deprived of his or her posted funds. Under these circumstances, there is no due process imperative for imposing the no-reasonable-possibility-of-benefit standard at the conclusion of the case in a situation where the plaintiff voluntarily furnished security.

Donner contends that if a prevailing defendant is not required to meet the no-reasonable-possibility-of-benefit standard at the conclusion of the case, plaintiffs will not be inclined to voluntarily post security. We do not find this

to be a pivotal consideration impacting our interpretation of section 800. As noted, the essential purpose of the section 800 bond statute is to create a deterrent to unwarranted shareholder derivative lawsuits by providing a mechanism for securing a prevailing defendant's expenses up to $50,000. The voluntary posting option is a corollary provision that allows a plaintiff to avoid the delay inherent in litigating a defendant's bond motion. When deciding whether to post bond, the plaintiff must decide if the benefits of voluntarily posting (i.e., quicker resolution of the case) outweigh the risk that the plaintiff might lose the case and forfeit the security. However, regardless of whether the defendant's bond motion is litigated or resolved voluntarily, the statute's purpose of imposing a security impediment to shareholder derivative lawsuits remains intact. There is nothing in the legislative scheme suggesting the statute should be interpreted to *maximize* voluntarily posting, at the expense of expanding litigation at the conclusion of the case by requiring a retrospective determination of the no-reasonable-possibility-of-benefit standard. To the extent voluntary posting should be encouraged as a matter of public policy, any restructuring of the section 800 bond statute to further this goal is a matter for the Legislature to consider.

To support its argument that the no-reasonable-possibility-of-benefit standard should be evaluated in hindsight after the conclusion of the case, Donner cites the parties' stipulation at the time of the voluntary posting which provides that the deposit could be applied to enforce the plaintiffs' liability "*if any.*" (Italics added.) Donner posits that the stipulation's recognition that liability on the bond was not established by the posting contemplates further proceedings, and that the parties understood these further proceedings would include litigation of the no-reasonable-possibility-of-benefit standard. We are not persuaded. At the time Donner voluntarily posted security, liability on the security was not established because it was not known which party would prevail. The reference to the undetermined bond liability in the stipulation does not shed any definitive light on the issue of whether the no-reasonable-possibility-of-benefit standard should be included in the matters to be resolved once the defendant prevailed. For the reasons stated above, we conclude it should not.

### 2. Frivolousness Standard

Donner further argues that as a matter of policy an award of fees under section 800 should require a showing the plaintiff's lawsuit was frivolous. Donner posits that if this requirement is not imposed, there will be a chilling effect on shareholder derivative lawsuits because shareholders will know attorney fees liability will be incurred in any case in which they voluntarily

provide security and a special litigation committee thereafter ascertains the lawsuit should not be pursued for business reasons, even if the allegations in the complaint are meritorious.

Donner is essentially asking us to rewrite the section 800 bond requirements. There is no frivolousness requirement for attorney fees recovery expressly or implicitly set forth in section 800. Donner's request for the insertion of a frivolousness standard is a policy matter for the Legislature, not the courts.

## B. *Prevailing Party Determination After Dismissal Without Prejudice*

Section 800 does not define the circumstances under which the defendant may obtain attorney fees on a bond or other security furnished by the plaintiff. Consistent with the intent of section 800 and other legislative schemes authorizing attorney fees, the courts and commentators have inferred that a defendant may enforce a security posted under section 800 if he or she is determined to be the prevailing party. (See *Beyerbach, supra,* 42 Cal.2d at pp. 21, 23–24; *Alcott v. M. E. V. Corp., supra,* 193 Cal.App.3d at p. 799; Friedman, Cal. Practice Guide: Corporations, *supra,* ¶ 6:659, p. 6-138.15.) The definition of prevailing party is not uniform under California law, and many attorney fees statutes contain a technical definition applicable to the particular statutory scheme. (See, e.g., *Santisas v. Goodin, supra,* 17 Cal.4th at p. 609; *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 [1 Cal.Rptr.3d 331, 101 P.3d 140]; *Agnew v. State Bd. of Equalization* (2005) 134 Cal.App.4th 899, 908–909 [36 Cal.Rptr.3d 464].) Because section 800 does not define prevailing party, we must construe the meaning of the term for purposes of a section 800 attorney fees award after a dismissal without prejudice without the benefit of any express statement of legislative intent.

In reaching its prevailing party determination, the trial court relied on the practical standard set forth in *Damian v. Tamondong* (1998) 65 Cal.App.4th 1115 [77 Cal.Rptr.2d 262] (*Damian*). As we shall explain, we conclude the court applied the correct standard and reasonably exercised its discretion to characterize Schaffer as the prevailing party.

Schaffer asserts the definition of prevailing party set forth in Code of Civil Procedure section 1032 (which applies to an award of costs) is the standard applicable to section 800 fees. Code of Civil Procedure section 1032, subdivision (a)(4) defines prevailing party as including a "defendant in whose favor a dismissal is entered," with no requirement that the court evaluate the merits of the lawsuit. An opposite standard for prevailing party is set forth in

Civil Code section 1717, subdivision (b)(2) (applicable to contractual attorney fees awards for contract claims), which *precludes* an award of attorney fees after a voluntary dismissal, regardless of the potential merits of the action. The courts have repeatedly rejected the contention that either of these prevailing party standards should be automatically applied in cases where the authorizing attorney fees statute does not define prevailing party. (*Gilbert v. National Enquirer, Inc.* (1997) 55 Cal.App.4th 1273, 1276–1277 [64 Cal.Rptr.2d 659] (*Gilbert*); *Damian, supra,* 65 Cal.App.4th at pp. 1123–1126, 1129; *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1572–1574 [26 Cal.Rptr.2d 758] (*Heather Farms*); see *Santisas v. Goodin, supra,* 17 Cal.4th at pp. 614–615, 617.)

In the absence of legislative direction in the attorney fees statute, the courts have concluded that a rigid definition of prevailing party should not be used. (*Gilbert, supra,* 55 Cal.App.4th at p. 1277.) Rather, prevailing party status should be determined by the trial court based on an evaluation of whether a party prevailed " 'on a practical level,' " and the trial court's decision should be affirmed on appeal absent an abuse of discretion. (*Ibid.; Damian, supra,* 65 Cal.App.4th at pp. 1126, 1129–1130 & fn. 15; *Heather Farms, supra,* 21 Cal.App.4th at p. 1574; see *Santisas v. Goodin, supra,* 17 Cal.4th at p. 622 [pragmatic definition of prevailing party, based on extent to which party has realized litigation objectives, applies to tort claims under contractual attorney fees provision]; *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1018, 1022–1024 [10 Cal.Rptr.3d 865] [policy underlying particular attorney fees statute considered as part of practical test].)

This "practical level" standard has been applied in cases involving a dismissal without prejudice. (*Gilbert, supra,* 55 Cal.App.4th at pp. 1277–1278; *Heather Farms, supra,* 21 Cal.App.4th at pp. 1570, 1574; *Parrott v. Mooring Townhomes Assn., Inc.* (2003) 112 Cal.App.4th 873, 875, 879 [6 Cal.Rptr.3d 116].) For example, in *Gilbert,* a case involving a plaintiff who voluntarily dismissed certain causes of action without prejudice in order to expedite the appeal of other causes of action that had been stricken on demurrer, the appellate court affirmed the trial court's decision that it was premature to decide which party had prevailed "on a practical level." (*Gilbert, supra,* at pp. 1277–1278.)

Given that there is no statutory definition of prevailing party here, the flexible, pragmatic standard generally used by the courts to determine prevailing party status applies. Thus, the matter is to be determined by the trial court in the exercise of its discretion based on practical considerations.

■ Donner contends that because this case involves a dismissal without prejudice that did not reflect on the merits of the allegations in the complaint, the trial court could not properly characterize Schaffer as a prevailing party. Donner's argument is premised on the unique characteristic of the special litigation committee defense. The special litigation committee defense is rooted in the business judgment rule, which restrains courts from unduly interfering in the good faith business decisions of corporate directors. (*Finley v. Superior Court* (2000) 80 Cal.App.4th 1152, 1157–1163 [96 Cal.Rptr.2d 128]; *Desaigoudar v. Meyercord, supra,* 108 Cal.App.4th at pp. 183–184, 186–188.) When a committee of directors concludes that pursuit of the derivative lawsuit is not in the best interests of the company, the trial court must determine whether this decision abrogates the lawsuit. (*Finley v. Superior Court, supra,* 80 Cal.App.4th at p. 1158.) To determine whether the special litigation committee defense should prevail, the court does not evaluate the merits of the lawsuit, but only considers whether the committee members acted independently and made an adequate investigation of the controversy. (*Desaigoudar v. Meyercord, supra,* 108 Cal.App.4th at pp. 185, 188.) If the court finds a disinterested committee made a good faith, reasonable inquiry before reaching its decision that the lawsuit should not be prosecuted, the committee's decision provides a complete defense to the derivative lawsuit. (*Ibid.*)

We conclude the trial court reasonably exercised its discretion to find that Schaffer was the prevailing party. Donner's dismissal of the complaint was not truly voluntary; rather, it was compelled by the special litigation committee's decision that it was not in the best interests of the corporation to continue the lawsuit. Even though the special litigation committee's decision did not establish that the *allegations in the complaint* lacked merit, it did establish that the *lawsuit itself* could not be pursued because of the peculiar nature of the business judgment rule/special litigation committee defense which blocks litigation that is properly determined not to be in the best interests of the company. Thus, as a practical matter, the special committee's decision ended the litigation in favor of Schaffer and against plaintiffs. Donner has not proffered any persuasive argument as to why, under the circumstances of this case, the trial court was necessarily required to also consider the underlying merits of the allegations in the complaint. We conclude the trial court did not abuse its discretion in finding that Schaffer prevailed because the lawsuit ended based on the existence of a complete defense, and with no recovery obtained by Donner on behalf of the corporation.

## DISPOSITION

The order is affirmed. Donner to pay Schaffer's costs on appeal.

McDonald, J., and O'Rourke, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 13, 2006, S146798.