[No. A105005. First Dist., Div. Three. Sept. 28, 2004.]

CYNTHIA BAXTER, Plaintiff and Appellant, v.
SALUTARY SPORTSCLUBS, INC., Defendant and Respondent.

COUNSEL

Abraham Camhy for Plaintiff and Appellant.

Frederick B. Hayes for Defendant and Respondent.

OPINION

**POLLAK, J.**—Cynthia Baxter brought this action under the unfair competition law (Bus. & Prof. Code, § 17200 (UCL)) to ensure that membership contracts used by defendant Salutary Sportsclubs, Inc. (Salutary), conform precisely with the requirements of the Civil Code relating to health studio contracts. After a court trial in which Baxter obtained modest relief, she sought attorney fees under Code of Civil Procedure section 1021.5 (section 1021.5), claiming she had enforced "an important right affecting the public interest." The trial court disagreed and denied her motion. We agree with the trial court's assessment of what this action has accomplished, and affirm.

BACKGROUND

The scant record on appeal reveals the following facts. Salutary owns and operates several health clubs in California. Prior to the filing of the complaint on March 26, 2002, Abraham Camhy, attorney for Baxter, initiated an investigation into Salutary's "contractual practices" by hiring "a private investigator posing as a consumer" to join one of Salutary's facilities, thereby obtaining a copy of its service contract. Upon reviewing the contract, Baxter discovered it did not comply with the California statute governing health club contracts. (Civ. Code, §§ 1812.80–1812.95, the "health studio contracts law.") Baxter, "who had a pre-existing professional relationship" with Camhy's law practice, "agreed to come forward on behalf of the general public to correct the alleged violations."

Baxter filed her complaint, alleging Salutary's contracts failed to comply with the health studio contracts law in several ways. First, although the contracts informed customers that they have a right to cancel the contract within three days, they did not point out that Sundays and holidays are not included in calculating this time period. Second, Salutary's name and address did not appear on the first page of the contract. Third, the contracts failed to inform customers that they need not use specific words to cancel their contracts, but could cancel by using "words of similar effect."[1]

Baxter alleged four causes of action, labeled: 1) "declaratory relief on the contracts"; 2) "rescission"; 3) "notice to consumers"; and 4) "for violations of Business and Professions Code §§ 17200, et seq." In her prayer for relief, Baxter asked the court to declare void the contracts between Salutary and its customers; to enjoin Salutary from continuing to engage in unfair business practices; to award restitution and/or disgorgement; to require Salutary to "engage in a corrective information campaign"; and to enter various other orders relating to the contracts. Baxter also sought prejudgment interest, attorney fees and costs.[2]

Although Salutary asserted its contracts complied with the spirit if not the letter of the law, after the complaint was filed it modified its membership contracts to conform precisely with the health studio contracts law. Nevertheless, the case went forward to a bench trial. After trial, the court issued a statement of decision in which it found, among other things, that before

---

[1] The complaint also alleged that the formula provided in the contract to determine the amount to which a customer is entitled upon cancellation did not conform with the formula provided in the statute. This issue was not addressed in the statement of decision and Baxter makes no reference to it in any of her arguments on appeal.

[2] It is possible that other forms of relief were sought; however, the complaint that appears in the record is incomplete.

Baxter's lawsuit was filed, Salutary had used membership agreements that did not comply with certain provisions of the health studio contracts law. The court further found that after the lawsuit was filed, Salutary had amended its contracts to comply with the relevant statutes. The court went on to note that Baxter "has absolutely no personal knowledge of the defendant's business" and held that she had no standing to pursue her first and second causes of action. The court also concluded that the third cause of action for "notice to consumers" "is not a legally recognized ground for relief."

As to the remaining cause of action for violations of the UCL, the court found there were no damages to any members of Salutary's health clubs and no evidence that Salutary had ever attempted to enforce a contract provision that did not comply with the health studio contracts law. Lest its findings be misunderstood, the court went on: "The court further finds there has been absolutely no showing of any harm to anyone by virtue of the language in the nonconforming contract." Nevertheless, the trial court ordered Salutary to review all of its contracts and send written notice to those customers who had signed nonconforming contracts that they could "(a) continue under the provisions of the nonconforming contract; or (b) execute a new contract with language which conforms to the health studios law." The court also ordered Salutary to post a similar notice in each of its facilities for six months.

Baxter then made a motion for attorney fees pursuant to section 1021.5, arguing that she had "achieved a substantial benefit for the general public in this action . . . ."[3] The trial court disagreed and denied the motion, reasoning that "[t]he relief granted plaintiff was a de minimus change in the defendant's contracts that did not result in a significant benefit to the public." Baxter timely appealed, challenging only that portion of the order denying her request for attorney fees.

### DISCUSSION

■ Ordinarily, an order denying attorney fees under section 1021.5 is reviewed for abuse of discretion. (See, e.g., *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 634 [71 Cal.Rptr.2d 632]; *Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 544 [63 Cal.Rptr.2d 118].) Baxter urges this court to apply a de novo standard of review. In this case it makes no difference, because under any standard we conclude that the trial court correctly denied attorney fees here.

As relevant to this case, section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing

---

[3] Baxter also included a request for her costs and expenses. The trial court denied that request on the basis that costs are recoverable only by way of a memorandum of costs and not under section 1021.5. Baxter does not challenge that portion of the trial court's order.

parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." "The fundamental objective of this statute is ' " 'to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits . . . .' " ' " (*Mandicino v. Maggard* (1989) 210 Cal.App.3d 1413, 1416 [258 Cal.Rptr. 917].)

The parties focus their arguments on whether this litigation provided a "significant benefit . . . on the general public or a large class of persons." Baxter suggests that the correction of any statutory violation necessarily provides a significant benefit to the public. She is mistaken. "[I]n enacting section 1021.5, the 'Legislature did not intend to authorize an award of attorney fees in *every* case involving a statutory violation.' [Citation.] Instead, in deciding whether to award attorney fees under the statute, a trial court should determine realistically the significance of the benefit, and the size of the class receiving the benefit, in light of all pertinent circumstances." (*Mandicino v. Maggard, supra,* 210 Cal.App.3d at p. 1417.) "Because the public always has a significant interest in seeing that laws are enforced, it always derives some benefit when illegal private or public conduct is rectified. Nevertheless, the Legislature did not intend to authorize an award of fees under section 1021.5 in every lawsuit enforcing a constitutional or statutory right. [Citations.] The statute specifically provides for an award only when the lawsuit has conferred 'a significant benefit' on 'the general public or a large class of persons.' The trial court must determine the significance of the benefit and the size of the class receiving that benefit by realistically assessing the gains that have resulted in a particular case." (*Flannery v. California Highway Patrol, supra,* 61 Cal.App.4th 629, 635 [71 Cal.Rptr.2d 632].)

"The trial court, in considering fee awards to private litigants on the facts and record applicable to each particular case, must carefully walk the line between unreasonably transmuting section 1021.5 into an unwarranted cornucopia of attorney fees for those who intervene in, or initiate litigation against, private parties under the guise of benefiting the public interest while actually performing duplicative, unnecessary, and valueless services, and providing appropriate compensation under that statute in cases where the colitigating private party does render necessary, significant services of value and benefit to the public." (*Committee to Defend Reproductive Rights v. A Free Pregnancy Center* (1991) 229 Cal.App.3d 633, 643–644 [280 Cal.Rptr. 329].)

This case is a textbook example of valueless litigation against a private party "under the guise of benefiting the public interest."

The trial court in this case carefully documented its assessment of the gains achieved by the litigation. The record on appeal does not contain any of the evidence considered by the trial court in reaching its conclusions, so that the only indication we have as to the impact of the litigation is the statement of decision. The trial court found that the contracts issued by Salutary failed to comply with the health studio contracts law in the following limited respects: by failing to state that the three-day cancellation period did not include Sundays and holidays; by requiring two medical verifications, rather than one, to establish a medical disability; by failing to place the address to which a cancellation should be sent near the signature line; and by failing to notify customers that the agreement could be rescinded using "words of a similar effect." The trial court went on to find "that since the filing of this lawsuit, the defendant's membership contracts conform with the law," that "the contracts were modified well in advance of this trial," and that Baxter "has absolutely no personal knowledge of the defendant's business, nor any damages caused to any members of the defendant's clubs by virtue of the language used in the nonconforming contracts. The court further finds that plaintiff has never even visited one of the defendant's clubs. [¶] The court further finds no evidence was introduced of any actual loss or harm to any member of the defendant's clubs due to the non-conforming language in the contracts. [¶] The court further finds no evidence was introduced to establish the enforcement or attempted enforcement of the nonconforming contractual language against a member who is a signatory to a nonconforming contract. [¶] The court further finds there has been absolutely no showing of any harm to anyone by virtue of the language in the nonconforming contract."

Although Baxter asserts repeatedly that she has vindicated a significant right for the general public, the case affects at most only those members of the public who were or might become members of Salutary's facilities. There is no evidence in the record indicating how many people received the clarifying notice required by the court's judgment. Moreover, it strains candor to characterize the scant relief afforded by this litigation as a "significant benefit," regardless of the number of members in Salutary's health clubs. The record reflects that not a single person was ever adversely affected, or threatened to be affected, by Salutary's lapses in drafting its agreements.

It is also significant that there is no evidence that Baxter notified Salutary of the deficiencies in its contracts, or demanded their correction, before filing

this action.[4] Since Salutary corrected those minor deficiencies shortly after the suit was filed, it appears the litigation and the consequent attorney fees were largely, if not entirely, unnecessary.[5]

The sweep of the UCL is broad. "[A]ny unlawful business practice . . . may be redressed by a private action charging unfair competition in violation of Business and Professions Code sections 17200 . . . ." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 210–211 [197 Cal.Rptr. 783, 673 P.2d 660].) "The Legislature intended this 'sweeping language' to include ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' " (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266 [10 Cal.Rptr.2d 538, 833 P.2d 545].) Business and Professions Code section 17204 authorizes suits "by any person acting for the interests of itself, its members or the general public." (See *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 582–583 [71 Cal.Rptr.2d 731, 950 P.2d 1086].) But while Baxter may have had the right to bring this action, and prevailed in establishing that Salutary's contracts were not in full compliance with all statutory requirements, it does not follow as a matter of law that this litigation has conferred a significant benefit on anyone, much less on a large segment of the public, and the record reflects that as a matter of fact it did not.

---

[4] In his declaration in support of the motion for attorney fees, Baxter's attorney, Abraham Camhy, stated that "Prior to filing a request for a preliminary injunction I contacted attorneys for defendant and requested assurances that it would discontinue using the non-complying documents with consumers. My requests for assurances were denied." This statement falls short of the mark in several respects. First, the complaint was filed on March 26, 2002, while the motion for a preliminary injunction was filed on May 17, 2002. Second, the statement does not indicate the manner in which Camhy contacted Salutary's attorneys. While he might have sent a letter, no such letter was attached to the declaration, and the statement in the declaration might also mean that Camhy left a voicemail message that went unreturned. Finally, there is no indication that the request for "assurances" identified the specific changes Camhy demanded, nor is there any indication of whether there were any other conditions attached to his request (such as the payment of attorney fees). The declaration hardly establishes that Baxter gave Salutary an opportunity to correct the minor imperfections in its contracts prior to bringing this action.

[5] We do not imply that, under current California law, attorney fees are never appropriate when the action prompts a change in the defendant's practices before the court renders a decision. (See, e.g., *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1291–1292 [240 Cal.Rptr. 872, 743 P.2d 932] ["An award of attorney fees under section 1021.5 is appropriate when a plaintiff's lawsuit ' "was a *catalyst* motivating defendants to provide the primary relief sought," ' or when plaintiff vindicates an important right ' "by activating defendants to modify their behavior" ' "].) This issue is currently under review by the Supreme Court. (*Graham v. DaimlerChrysler Corp.*, review granted Feb. 19, 2003, S112862; *Tipton-Whittingham v. City of Los Angeles*, review granted Mar. 19, 2003, S112943.) Here, we are not convinced that a bona fide effort was made to correct the situation without litigation.

Attorney fees have been rejected for noncompliance with other requirements of section 1021.5 even when as important an interest as preventing sexual harassment by a large organization has been vindicated. (See *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1170–1171 [74 Cal.Rptr.2d 510] and *Flannery v. California Highway Patrol, supra,* 61 Cal.App.4th at p. 635 [rejecting fees under § 1021.5 because the plaintiff's primary purpose was vindication of her own rights].) In *Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 628–629 [55 Cal.Rptr.2d 818], the Court of Appeal affirmed the trial court's denial of attorney fees under section 1021.5, even though the suit had caused a number of ski resorts to modify their release forms to comply with applicable laws. There, the court reasoned that the plaintiff was not a prevailing party within the meaning of the statute because "plaintiff did not obtain the 'primary relief sought,' that being a prohibition against releases of liability, and did not vindicate 'an important right,' inasmuch as skiing is not a matter of public interest." (*Olsen,* at p. 629; cf. *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 319 [193 Cal.Rptr. 900, 667 P.2d 704] [holding that the plaintiffs had conferred a substantial benefit on the general public in challenging a supermarket's practice of disallowing the collection of petition signatures on its property].)

■ While the broad sweep and relaxed standing requirements of the UCL often serve a valuable purpose in vindicating important rights on behalf of the general public, they are not, in combination with section 1021.5, a license to bounty-hunt for niggling statutory violations that neither harm nor threaten to harm anyone, especially when there is no showing that the offending party refuses to correct the violations after they have been brought to its attention. The trial court did not err in refusing to award attorney fees for the minuscule benefit this litigation has conferred on the public.

### DISPOSITION

The order denying the motion for attorney fees is affirmed. Salutary shall recover its costs on appeal.

Corrigan, Acting P. J., and Parrilli, J., concurred.