Filed 1/16/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DON SMITH, JR., | 2d Civ. No. B281758 |
| | (Super. Ct. No. 1485410) |
| Plaintiff and Respondent, | (Santa Barbara County) |
| v. | |
| JOANN SZEYLLER, Individually and as Trustee, etc., et al., | |
| Defendants and Respondents; | |
| SAMUEL WACHTOR, as Personal Representative, etc., | |
| Objector and Appellant. | |
| JOANN SZEYLLER, as Trustee, etc., | (Super. Ct. No. 1485889) |
| | (Santa Barbara County) |
| Plaintiff and Respondent, | |
| v. | |
| DON SMITH, JR., et al., | |

Defendants and Respondents;

SAMUEL WACHTOR, as
Personal Representative, etc.,

Defendant and Appellant.

DON SMITH, JR.,

    Plaintiff and Respondent,

v.

JOANN SZEYLLER,
Individually and as Trustee,
etc., et al.,

    Defendants and Respondents;

SAMUEL WACHTOR, as
Personal Representative, etc.,

    Defendant and Appellant.

(Super. Ct. No. 16PR00182)
(Santa Barbara County)

Don Smith Sr. and Gladys Smith created a family trust naming their five children as beneficiaries. As is often the case, upon the demise of the trustors, a dispute arose amongst the trust beneficiaries concerning the management of the trust and the distribution of its monetary assets. One of the children, Joann Szeyller (née Smith), and her husband were the trustees. Her brother, Don, took issue with their management of the trust and its accountings. Not all of the siblings, however, participated

2

in the litigation though each was named and given notice of the proceedings.

Following five days of trial, the case was resolved by agreement of the parties with court oversight and approval. The stipulated settlement included the awarding of $721,258.28 to Don for attorney and expert fees and costs to be paid from assets of the trust and its sub-trusts.

One of the non-participating beneficiaries, Samuel Wachtor,[1] objected contending that the court lacked jurisdiction to make such an order and to make the award to Don for his attorneys and expert fees from trust assets. He also contended the order violated Donna's right to due process. We disagree. Here we hold that the trial court properly applied the "substantial benefit theory," an offshoot of the "common fund doctrine," in making its award of fees from trust assets. We affirm.

FACTS AND PROCEDURAL BACKGROUND

*The Family Trust and Its Sub-Trusts*

The beneficiaries of the family trust are Dave Earl (Dave); Donna Renee (Donna); Arleen Dee Smith Schall (Dee); Joann Marie Smith Szeyller (JoAnn); and Don Earl Jr. (Don).

Donna died while this appeal was pending. She suffered from mental illness until her death in March 2018. Her son, Wachtor, represented her in the underlying proceedings as her conservator; in this appeal he represents her estate. For simplicity, we refer to Donna and to Wachtor in his representative capacities collectively as "Donna."

---

[1] Samuel Wachtor is Donna Smith's son and acted as her representative.

When Don Sr. died, the trust held about $14 million in assets including income producing real property. Gladys became sole trustee and the assets were divided into three new sub-trusts.[2] Gladys retained the power to amend the Survivor's Trust. She retained the right to income from all three sub-trusts and to principal from the Survivor's Trust sub-trust during her lifetime. She also had a right to withdraw up to 5 percent of principal annually from the QTIP and ByPass sub-trusts in certain circumstances. Upon her death, each sub-trust was to pass equally to the five children.

Gladys gradually became estranged from all of her children except JoAnn, with whom she eventually lived. Gladys amended the Survivor's Trust several times. She disinherited Donna and Dee from the Survivor's Trust, and gave Dee's share to JoAnn. She made specific gifts to JoAnn of a house in Palm Desert, an undivided half-interest in a house in Big Bear, and all her personal property. She made JoAnn her successor trustee and, later, her co-trustee. She named JoAnn's husband, Edward Szeyller, as a successor trustee.

When Gladys died, JoAnn became sole trustee of all three sub-trusts.[3] She appointed Edward to serve with her as co-trustee of the Survivor's Trust. The Survivor's Trust now had three beneficiaries: JoAnn (50 percent), Don (25 percent), and

---

[2] The sub-trusts are (1) a revocable Survivor's Trust (39.39 percent of the assets); (2) a Qualified Terminal Interest Trust (QTIP)(49.90 percent); and (3) an irrevocable ByPass Trust (10.71 percent).

[3] The Family Trust named JoAnn and Dee as successor co-trustees of all three sub-trusts, but Dee renounced the position.

4

Dave (25 percent). The QTIP and ByPass Trusts had five: JoAnn, Don, Dave, Donna, and Dee (20 percent each).

<em>The Petitions</em>

In the months following Gladys's death, JoAnn and Edward sold real property owned by the trusts. Learning of this, Don demanded financial information and trust accountings. JoAnn and Edward provided accountings, to which Don objected.

Don filed a verified petition, in which he questioned over two million dollars worth of expenditures, gambling, and gifts to JoAnn and Edward from the Survivor's Trust accounts during the last years of Gladys's life. (*In re The Smith Family Trust* (Super. Ct. Santa Barbara County, 2015, No. 1485410).) He asked the court to freeze the trust accounts and remove the trustees and order them to pay redress for breach of trust. He also sought an award of attorney's fees to be paid from all three sub-trusts which, he alleged, would substantially benefit from his efforts.

Only JoAnn and Edward responded to his petition. They alleged that the challenged expenditures, gambling, and gifts were all within Gladys's power to spend income as she wished and were consistent with her habits of many years. They acknowledged they borrowed $282,000 from the Survivor's and QTIP Trusts after Gladys's death. They used the money to preserve trust assets and would repay it.

JoAnn and Edward agreed to freeze trust assets, distribute $200,000 to each beneficiary before trial, and revise the accountings. They petitioned for approval of their revised accountings; Don filed objections. (*In re The Smith Family Bypass and QTIP Trusts* (Super. Ct. Santa Barbara County, 2015, No. 1485889).) He also filed a petition for "Financial Elder Abuse and Disinheritance" in which he raised the same issues but characterized the alleged conduct as financial elder abuse.

(*In re The Smith Family Trust* (Super. Ct. Santa Barbara County, 2016, 16PR00182).)

The parties served the other siblings with these petitions and objections. They did not respond. Don's counsel asked Donna to become involved in the litigation, but she declined.

*Trial*

The court consolidated the petitions and set them for trial. Don served all beneficiaries with notice of the trial. Donna did not attend. Dave and Dee were present at times but remained outside the courtroom, standing by as witnesses.

On the third day of trial, counsel for JoAnn and Edward announced that their accountant had prepared new accountings in response to Don's concerns. The court stated, "we're now to the point . . . where the only thing that really needs to get done is we need to file the final [revised IRS Form] 706 . . . what everyone agrees to, or the Court orders, . . . then we need to figure out who gets the rest of the money and write the checks. I don't see that as being a nine-year process that needs to have, you know, new trustees for purposes of emotional victory, or whatever. I agree, probably had I had an understanding of this whole case at an earlier point in time . . . maybe I would have been hot to trot to remove the trustees, . . . but that's just how it goes."

Don's counsel said he had "no more money to pay an accountant" to review the revised accountings. The court indicated it might "hire a referee" to review them. The next day, JoAnn and Edward filed and served the revised accountings on all beneficiaries along with a request for an order approving them.

Don questioned the accountant about her revised accountings. The accountant explained she reassessed principle and income distributions to correct problems pointed out by Don's

6

expert. Following her testimony, the court held an unreported chambers conference.

*Settlement and Order After Hearing*

The next morning, Don, Joann, and Edward announced they had reached a settlement. After another unreported chambers conference, counsel put the settlement terms on the record and the court added its own findings.

The terms of the settlement provided: JoAnn would pay to Don a "confidential" sum from her share of the sub-trust distributions. No other terms would be confidential. JoAnn and Edward would waive their trustee's fees. They would pay, on behalf of the sub-trusts, tax penalties and interest for undisclosed gifts from Gladys in the last two years of her life. The court would review their revised accountings and appoint a referee to complete an amended IRS Form 706 and a final accounting. The sub-trusts would pay Don's attorney and expert fees, $721,258.28 comprised of 39.39 percent from the Survivor's Trust, 49.90 percent from the QTIP Trust, and 10.71 percent from the ByPass Trust. The sub-trusts would likewise pay Don, JoAnn, and Edward's attorney's fees for work necessary to complete the accountings and close the sub-trusts, subject to objections and court approval.

With respect to Don's attorney's fees, the court added its finding on the record that, "this action by Don Smith, Jr., has benefitted all of the beneficiaries of the [family] trust, including himself and [JoAnn and Edward], by acting as a catalyst to the improved preparation of the accountings." Regarding fraud, it said: "[The case] was stopped in the middle of the trial. I didn't find any evidence of any conspiracy, or any intentional acts to try to do poor accountings. I didn't find the plug number to be

7

fraudulent. It's just a plug number.[4] That's something that exists in accounting."

Don's counsel prepared an "Order After Trial" which set forth the agreement and findings. The court retained jurisdiction to approve the final accountings and the parties agreed there would be no distributions pending acceptance of the amended Form 706.

*Donna's Post-Trial Motions*

Although Donna did not participate in the trial, she filed post-trial motions for a new trial and to vacate the judgment. She argued that Don did not request the fee award in his pleadings, it was not supported by any evidence, it was disproportionate to any benefit to the beneficiaries, and it violated her right to due process, among other things.

The court denied Donna's motions because motions for new trial are not permitted in probate proceedings (Prob. Code, § 7220)[5] and it found she forfeited her objections.

DISCUSSION

The court had the equitable power to award the agreed upon fees to Don under the "substantial benefit doctrine." Donna forfeited her objections to the fee award when she did not object to Don's petitions and objections.

*Standard of Review*

We independently review legal issues regarding the criteria for a fee award, and defer to the trial court's discretion on how

___

[4] A "plug" number is sometimes used to reconcile a discrepancy in a financial statement. (See http://www.businessdictionalry.com/definition/plug.html.)

[5] All further statutory references are to the Probate Code unless otherwise stated.

8

they are exercised.  (*Pipefitters Local No. 636 Defined Benefit Plan v. Oakley, Inc.* (2010) 180 Cal.App.4th 1542, 1547-1548 [review of award based on the substantial benefit doctrine]; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [fee awards in general reviewed for abuse of discretion].)  We will disturb a fee award under the substantial benefit doctrine only if the "action is clearly wrong and without reasonable basis." (*Pipefitters*, at pp. 1547-1548.)

*Due Process and Approval of the Revised Accountings*

Donna contends the trial court denied due process and exceeded its jurisdiction when it characterized the settlement terms as "findings" and when it approved revised accountings without either 30 days notice to the non-participating beneficiaries,[6] a motion to enforce the settlement;[7] a petition to approve the settlement;[8] or a new accounting that includes the settlement (§ 16062, subd. (a)).[9]  She contends she was deprived of an opportunity to present evidence that the settlement was unfair and only benefitted Don, JoAnn, and Edward.  She contends the probate court unfairly imposed Don's fees on the trusts in order to facilitate settlement between Don, JoAnn, and Edward.  We reject her contentions.

The court had jurisdiction to resolve the dispute between Don, JoAnn, and Edward over their accountings for the period from July 2009 through April 2015 because their petitions and objections framed that dispute.  (§§ 1043, 1046.)  The court had

---

[6] Section 17203, subdivision (a).

[7] Code of Civil Procedure section 664.6.

[8] Section 17200, subdivision (b)(5).

[9] Section 16062, subdivision (a).

jurisdiction to accept or reject the accountings or order them amended or modified. One of Don's central objections to the accountings was that they mischaracterized principal and income, thereby concealing invasion of principal. The matter was squarely before the court at the evidentiary hearing of which Donna had notice. JoAnn and Edward revised the accountings at trial to re-characterize principal and income in response to Don's concerns.

Donna chose not to participate in the trial and cannot now second-guess the resolution of Don's objections. The litigating parties resolved disputed facts, and the court was bound by that resolution. (*Capital National Bank v. Smith* (1944) 62 Cal.App.2d 328, 343 ["A stipulation of counsel at the trial of a case, agreeing that specified material facts upon essential issues may be considered as evidence, and that a judgment shall be rendered accordingly, is binding upon the respective parties thereto and upon the court."].)

This case is unlike those cited by Donna in which lack of notice deprived courts of jurisdiction. (e.g. *Estate of Buckley* (1982) 132 Cal.App.3d 434, 449-450.) Donna does not dispute that she received notice of every pleading and the evidentiary hearing.

Due process did not require the parties to use other procedures, such as a motion to enforce a settlement or a petition for approval of a settlement or a new accounting. Had the petition to resolve the accounting dispute not been contested, the parties might have settled their differences outside of court and petitioned for approval of a settlement (§ 17200, subd. (b)(5)) or moved for judgment on the terms of the settlement (Code of Civ. Proc., § 664.6). But such procedures were unnecessary because

10

the dispute was before the court on properly noticed petitions and objections.

The record does not support Donna's claim that the court "attempt[ed] sleight of hand." The only "secret" was the amount of money JoAnn would pay Don from her own distribution; that payment could not impact any other beneficiary. Donna quotes colloquy out of context to suggest that the court knew the beneficiaries would "be mad," if they discovered the "secret, confidential settlement sum," that was "buried inside of all these returns," and that they were not "sophisticated enough to figure it out on their own," and that it admonished the litigating parties to "text them and treat them appropriately." Her interpretation is not supported by the record in context. The court used the quoted language to express its concern that the revised Form 706 would inadvertently disclose the amount of the confidential payment to Don, its concern that the beneficiary witnesses who were on call would suffer inconvenience if they were not informed that trial was over.

The court said, "I'm concerned about the tax impacts of that transfer [from JoAnn to Don] and how that transfer is going to happen." Counsel explained there would be no tax impact because it would come from JoAnn's share into Don's share before distribution, as a non-taxable inheritance. The court asked, "You are going to . . . have that evidenced in [the 706], or it's going to be post 706?" Counsel replied that the accountant referee would decide. The Court asked if counsel would like to have the settling parties "sign the addendum that ha[d] a number on it that's confidential, and not disclose [it] to the other heirs, except in the recasting of the 706? If they are sophisticated enough to read it, they might figure [it] out, or something." The court added, "So when the 706 is done, in order for there to be no tax impact of the

11

movement of the secret, confidential settlement sum, it'll get buried inside of all these returns.  If one of your other siblings wanted to study it like this for $300,000, they could figure it out.  So the idea here is it's a nondisclosure thing.  I met them all, and they don't seem like they're sophisticated enough to figure it out on their own.  It's none of their business."

Intertwined with this colloquy, were the court's remarks about letting the beneficiary witnesses know the trial was over.  Dee and Dave were on call as witnesses and had been driving long distances to wait to testify.  The court said, "The other beneficiaries were going to be witnesses, and they were sent away, and they are going to need to be told that the trial is over, whatever."  Don's counsel agreed to "text them the case is over," and "[t]hey don't need to come back to court."  Later, the court said, "[I]t's totally up to you to text them and treat them appropriately, so they know they don't have to come back.  Because if they come back here next Monday and say, 'Hey, Judge, why didn't you call me up?' they'll be mad and you'll have problems, so please take care of that."

*Authority to Award Fees*

Donna contends the court exceeded its jurisdiction when it awarded fees to Don under the substantial benefit doctrine.  She claimed that because the theory was un-pled and inapplicable, she had no opportunity to object, and the settlement unfairly benefited the litigating parties at the expense of the other beneficiaries.  We disagree.

Trust beneficiaries must generally pay their own attorney's fees incurred challenging a trustee's conduct, even if they succeed.  (*Leader v. Cords* (2010) 182 Cal.App.4th 1588, 1595; Code Civ. Proc., § 1021.)  But under the substantial benefit exception, the trial court may exercise its "equitable discretion

12

. . . [to] determine[] whether the interests of justice require those who received a benefit to contribute to the legal expenses of those who secured the benefit." (*Pipefitters Local No. 636 Defined Benefit Plan v. Oakley, Inc., supra*, 180 Cal.App.4th at p. 1547.) The doctrine is an "outgrowth" of the common fund doctrine. (*Serrano v. Priest* (1977) 20 Cal.3d 25, 38.)

The common fund doctrine applies only to pecuniary benefits; the substantial benefit doctrine applies to both pecuniary and nonpecuniary benefits. (*Serrano v. Priest, supra*, 20 Cal.3d at p. 38.) It "permits the award of fees when the litigant, proceeding in a representative capacity, obtains a decision resulting in conferral of a 'substantial benefit' of a pecuniary or nonpecuniary nature. In such circumstances, the court, in the exercise of its equitable discretion, thereupon may decree that under dictates of justice those receiving the benefit should contribute to the costs of its production." (*Ibid.*)

Probate courts have used the common fund doctrine to confer equitable fees awards when litigation creates or preserves a fund from which others benefit. (e.g. *Estate of Reade* (1948) 31 Cal.2d 669.) The courts "have applied the 'substantial benefit' theory in a wide variety of circumstances" when the benefit is nonpecuniary. (*Serrano v. Priest, supra*, 20 Cal.3d at p. 38.) No published decision applies the substantial benefit doctrine in the probate context, "but it plainly would apply, for example, . . . to an action to remove a trustee who has breached the trust or to a petition to compel an accounting." (Hartog & Kovar, Matthew Bender Practice Guide: Cal. Trust Litigation (2018) 15.32[2].)

The theory was pleaded. Don specifically invoked the substantial benefit doctrine in two pleadings, each of which he served on Donna. In his first petition, Don alleged, "the removal of JoAnn & Edward Szeyller as Trustees and charging them

13

benefits all of the beneficiaries of the trust and [he] therefore request[ed] that reasonable attorneys' fees and costs incurred to remove the Trustees be charged as an expense of the trust and reimbursed to [him]." Don's objections to the petition to approve the revised accountings contained the same allegation and prayer. Both pleadings cited *Hutchinson v. Ghertsch*, *supra*, 97 Cal.App.3d at pp. 615-617. As the *Hutchinson* court observed, one of the purposes behind an equitable fee award is "fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses." (*Hutchinson*, at p. 617, quoting *Estate of Stauffer* (1959) 53 Cal.2d 124, 132.) Don's trial brief renewed his request for fees to be paid from the sub-trusts based on a substantial benefit to all beneficiaries.

Donna is correct that Don also requested a fee award against JoAnn and Edward based on bad faith and elder abuse. But the court found neither and Don agreed to release those claims.

Donna contends the court had no jurisdiction to award fees because Don's petitions sought fees for "removing" the trustees, and the trustees were not removed. But they were replaced by the referee and Don's efforts to remove them resulted in other concrete benefits. They were disabled from using or disbursing trust assets when the trust accounts were frozen. The referee was appointed to handle the final accounting, filings, and distributions. As the court explained, there was little more for a trustee to do before terminating the trusts, and there was no reason to appoint "new trustees for purposes of emotional victory."

Even if the award recognized benefits that Don did not specifically allege, and this could be construed as exceeding

14

jurisdiction, "[a]cts merely in excess of jurisdiction, by a court having jurisdiction of the subject matter and parties, should not be subject to collateral attack unless exceptional circumstances precluded an earlier and more appropriate attack." (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1095 (internal quotations omitted) [party who had notice of surcharge proceeding and elected not to participate was estopped from attacking findings made therein].)  Donna had a full opportunity to object to Don's petitions.

*Substantial Evidence to Support Fee Award*

The record supports the probate court's finding that the litigation substantially benefitted all beneficiaries.  Don's litigation preserved trust assets when the accounts were frozen, JoAnn and Edward's spending and borrowing stopped, they repaid a post-death loan, they waived their fees, and they assumed trust liability for tax penalties and interest.  All of this preserved a common fund for the benefit of the non-participating beneficiaries.

And even if there had been no pecuniary benefit to the non-participants, they received substantial nonpecuniary benefits for which the court had equitable power to award fees under the substantial benefit doctrine.  (*Fletcher v. A.J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 324, superseded by statute on other grounds in *Brusso v. Running Springs Country Club* (1991) 228 Cal.App.3d 92, 106, 110-111.)  In *Fletcher*, a shareholders' action conferred substantial nonpecuniary benefits on a corporation by maintaining its health, raising standards of fiduciary relationships, and preventing abuse.  Similarly, this litigation maintained the health of the sub-trusts; raised the standards of fiduciary relations, accountings and tax filings; and prevented abuse.  "It is not significant that the 'benefits' found

15

were achieved by settlement of plaintiffs' action rather than by final judgment." (*Id*. at p. 325.)

The trial court was well positioned to assess whether the litigation conferred a substantial benefit. It presided over two years of litigation and five days of trial. Its finding is supported by substantial evidence and is "decisive on the appeal." (*Fletcher v. A.J. Industries, Inc.*, *supra*, 266 Cal.App.2d at p. 325.)

There was no need for billing records to support the amount of the award, because the only parties who contested the award agreed to the amount. Had Donna responded or objected to Don's verified petitions, she would have been entitled to an evidentiary hearing on the question of the reasonable value of services rendered. (§§ 1043 [right to file objections], 1046 [court shall conduct a hearing on objections]; 1022 [uncontested verified petition is competent evidence]; *Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 271 [the probate court determines whether the litigation is a benefit and service to the trust before awarding fees].) But she did not. As her counsel explains on appeal, she made a deliberate decision that the cost of participating in the trial outweighed the potential benefits because her share of the distribution would be small. She participated in earlier proceedings, including a mediation and her own successful petition for preliminary distribution, but she chose not to litigate Don's fee claim.

Only JoAnn and Edward objected to the petitions and they withdrew their objections by settling their claims mid-trial, before Don was required to prove the amount of fees reasonably incurred. Don's counsel prepared a fee application the night before the parties reached settlement, and served it on JoAnn and Edward the next morning, but he did not file it because they reached a settlement. Had Donna participated in the trial, she

16

could have withheld consent to the settlement absent satisfactory proof of the amount claimed.

The probate court was not surprised by the amount Don claimed, having presided over the litigation for two years in the context of this family's dynamics. It remarked, "The totality of the fees and costs between these two firms, and one more accounting firm to finalize the 706, that experience is perfectly foreseeable, from my point of view, when you look down and you see what mom and dad Smith left as the likelihood of how this is going to go down."

Donna nonetheless contends that the court should have apportioned the fee award because most of Don's fees were incurred prosecuting his elder abuse petition, not for the benefit of the sub-trusts. Apportionment, however, was not necessary because the pleadings were completely intertwined and relied on the same factual allegations. (See *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1604.) "[A]llocation is not required when the issues are 'so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not.'" (*Ibid.*, quoting *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133.)

Donna's portion of the fee award is small and consistent with her interests in the sub-trusts. The court spread the litigation costs among the beneficiaries in proportion to their interest when it ordered the award to be allocated between the the sub-trusts 39.39 : 49.90 : 10.71. (*Serrano v. Priest, supra,* 20 Cal.3d at p. 40, fn. 10 [award is permitted if the litigation confers a substantial benefit on members of a class and the court can spread the costs proportionately among them].) Almost 40 percent of the fee award will be paid from the Survivor's Trust, of

which Donna is not a beneficiary and regarding which she had no standing to object. (§ 17200; Code Civ. Proc., § 902.) The total award will be borne mainly by Don and JoAnn, who have a combined 75 percent interest in the Survivor's Trust and 40 percent interests in the QTIP and ByPass Trusts. Donna's share of the $721,258.28 award is about $87,000. The court did not abuse its discretion when it allocated to her share this portion of the costs of the litigation.

DISPOSITION

The orders appealed from are affirmed. Respondents shall recover their costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

James F. Rigali, Judge

Superior Court County of Santa Barbara
_____

The Law Office of M. Jude Egan and M. Jude Egan, for Respondent and Appellant Samuel Wachtor as Personal Representative of the Estate of Donna Renee Smith.

Rogers, Sheffield & Campbell and Scott B. Campbell, for Petitioners and Respondents JoAnn Szeyller and Edward Szeyller.

Schley Look Guthrie & Locker and Ian M. Guthrie, for Petitioner and Respondent Don Smith.